# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32386**

————————————

**UNITED STATES**
*Appellee*

v.

**Steven A. GONZALES**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 2 August 2017

————————————

*Military Judge:* Jill M. Thomas.

*Approved sentence:* Bad-conduct discharge and confinement for 47 days. Sentence adjudged 10 February 2016 by SpCM convened at Travis Air Force Base, California.

*For Appellant:* Major Melissa Biedermann, USAF.

*For Appellee:* Lieutenant Colonel Roberto Ramírez, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, BROWN, and CARRILLO, *Appellate Military Judges.*

Judge CARRILLO delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge BROWN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

CARRILLO, Judge:

A special court-martial composed of a military judge sitting alone found Appellant guilty consistent with his pleas of one charge and four specifications of wrongful use, possession, and distribution of marijuana, and wrong-

ful possession of N-(2-Methoxybenzyl)-4-choro-2, 5-dimethoxyphenethyl-amine, a Schedule I controlled substance, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. The military judge sentenced Appellant to a bad-conduct discharge and two months of confinement. The convening authority approved the bad-conduct discharge and 47 days of confinement.

Appellant raises two assignments of error: that the trial counsel's sentencing argument was improper; and that the Government erred by failing to provide him with the authenticated record of trial (ROT) in a timely manner. Appellant requests we set aside his bad-conduct discharge and reduce his confinement. Finding no prejudicial error, we affirm the findings and sentence.

## I. BACKGROUND

While stationed at Travis Air Force Base, California, Appellant obtained a California medical marijuana identification card and purchased marijuana from a local medical marijuana dispensary. After teaching his girlfriend, Airman Basic (AB) MT, how to smoke marijuana using a glass water pipe, the two smoked it together several times and also ate brownies containing marijuana that Appellant made. Appellant informed another military member that he planned to open his own marijuana dispensary after finishing his four years in the Air Force.

Additionally, Appellant purchased what he believed to be "acid" on blotter paper, which turned out to be N-(2-Methoxybenzyl)-4-choro-2, 5-dimethoxy-phenethylamine, a Schedule I controlled substance under the Federal Controlled Substances Act, 21 U.S.C. § 812.

Appellant stored the marijuana and the blotter paper, both of which agents later seized, in his dorm room.

After using marijuana with AB MT, Appellant was ordered by his first sergeant to have no contact with AB MT. Appellant violated the order, for which he received non-judicial punishment.

## II. DISCUSSION

### A. Trial Counsel's Sentencing Argument

Toward the beginning of his sentencing argument, trial counsel argued:

> Your Honor, we are going to ask for a bad-conduct discharge. Operating a medical marijuana dispensary and use of medical marijuana, is illegal in the military and it is against federal law. And if that is what the accused wants to do, we will give

> him that dream. Give him a bad-conduct discharge. He can get out of the military and he can do that.

Trial counsel finished the sentencing argument, stating:

> Your Honor, based on all of this conduct, we believe we should give the accused what he wants, but first he deserves that eight months to sit and think . . . Once he has done [that], Your Honor, we think he should have the other things he wants. He should get a bad-conduct discharge, and he should be allowed to open his medical marijuana dispensary.

Although he did not object at trial, Appellant now alleges that this argument improperly blurred the lines between a punitive discharge and an administrative separation. He also alleges that it misstated the evidence and intentionally misrepresented the record by implying that Appellant wanted a bad-conduct discharge.

"Prosecutorial misconduct is 'action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon.'" *United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). That "standard was set by the Supreme Court in *Berger v. United States* in 1935, describing prosecutorial misconduct as behavior by the prosecuting attorney that 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.' 295 U.S. 78, 84 (1935)." *Id.* at 11–12 (bracket in original).

"Improper argument involves a question of law that this Court reviews de novo." *Pabelona*, 76 M.J. at 11 (quoting *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014)). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *Id.* (citation and internal quotation marks omitted in original). Because defense counsel failed to object to the arguments at the time of trial, we review for plain error. *United States v. Rodriguez*, 60 M.J. 87, 88 (C.A.A.F. 2004). The standard for plain error review requires that: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights. *Pabelona*, 76 M.J. at 11 (internal quotation marks and citation omitted). Appellant has the burden of establishing prejudice. *Id.*

We apply a three-part test to determine whether improper sentencing argument results in prejudice: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the weight of the evidence supporting the sentence and whether we can be confident that the appellant

was sentenced on the basis of the evidence alone. *Frey,* 73 M.J. at 249.

It is well-settled that a punitive discharge is "not intended to be a vehicle to make an administrative decision about whether an accused should be retained or separated." *United States v. Ohrt*, 28 M.J. 301, 306 (C.M.A. 1989). It is thus "improper to blur the lines between a punitive discharge and administrative separation." *United States v. Motsinger*, 34 M.J. 255, 256 (C.M.A. 1992); *see also United States v. Filyaw*, No. ACM S32062, 2013 CCA LEXIS 845, *10 (A.F. Ct. Crim. App. 2 Oct. 2013) (unpub. op.) (holding that the military judge's instruction cured the confusion when "[t]he Government's argument invited the members to focus on retention and assess a sentence that ensured appellant would be separated by suggesting that barring a bad-conduct discharge, the appellant would indeed be retained.").

Here, trial counsel's argument that giving the Appellant a bad-conduct discharge would be a way to "get [him] out of the military" so that he could "open his medical marijuana dispensary" was ill-advised. While likely intended sardonically rather than seriously, it risked blurring the line between a punitive discharge and administrative separation. Still, we find no risk that the military judge believed trial counsel to be stating that Appellant was in fact requesting a punitive discharge and to the extent that the remarks blurred the lines between punitive and administrative separation, Appellant forfeited any error by failing to object and has not demonstrated prejudice.

Applying the *Frey* factors, we find no prejudice. First, the purported misconduct was not severe. The comments were isolated and not the main focus of the argument—they were in fact just a few sentences in a much longer sentencing argument focusing on other, far more powerful themes. As well, the absence of a Defense objection shows "at least some measure of the minimal impact of the trial counsel's allegedly improper argument." *United States v. Lightner*, No. ACM 38253, 2014 CCA LEXIS 172, *15–16 (A.F. Ct. Crim. App. 14 Mar. 2014) (unpub. op) (internal quotation marks omitted). Second, as there were no members, no curative measures were required. Trial counsel's statements were made to a military judge alone. It is a "well-established rule that military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Hukill*, 76 M.J. 219, 221 (C.A.A.F. 2017) (internal quotation marks and citations omitted). Finally, the weight of the evidence amply supports the approved sentence, and we are fully confident that the military judge understood the difference between a punitive discharge and the possibility of administrative separation and sentenced Appellant on the basis of the evidence alone. We thus find no prejudice.

**B. Late Delivery of Authenticated Record of Trial to Appellant**

A defense counsel's failure to comment on any matter in the post-trial recommendation in a timely manner forfeits any later claim of error, unless it rises to the level of plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6), *Manual for Courts-Martial, United States* (2016); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). To prevail under a plain-error analysis, Appellant has the burden of persuading this court that: (1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right. *Kho*, 54 M.J. at 65 (citing *United States v. Finster*, 51 M.J. 185, 187 (C.A.A.F. 1999)). We review application of the plain error doctrine de novo, as a question of law. *Id*.

Appellant claims for the first time that the Government erred by failing to provide him with an authenticated ROT in a timely manner, in violation of Article 54(d), UCMJ, 10 U.S.C. § 854(d). Article 54(d), UCMJ, states, "A copy of the record of the proceedings of each general and special court-martial shall be given to the accused as soon as it is authenticated." The parties do not dispute that it took 17 days for the Government to provide Appellant with the authenticated ROT. The Government offers no explanation for the delay.

A 17-day unexplained delay may appear to violate the plain language of Article 54(d). However, even if it is error, we do not find a substantial right of the accused was materially prejudiced.

Appellant alleges that the delayed delivery of the ROT prevented him from reviewing the record "as soon as possible after the trial." He claims that earlier delivery would have made it easier for him and his counsel to recall any issues they believed needed to be raised in clemency, resulting in a limited ability to quickly recall and focus on any issues that they needed to address.

Appellant's argument is generalized and speculative. Importantly, Appellant has not, either in clemency or on appeal, identified any issues with the trial that he desired to address in his clemency submission. *Cf. United States v. Gilbreath*, 57 M.J. 57, 61–62 (C.A.A.F. 2002) (holding that when considering whether new matter included in an unserved addendum to a staff judge advocate recommendation prejudiced an appellant, the appellant should assert what, if anything, he would have submitted to deny, counter, or explain matters submitted by the Government). We find that Appellant has not demonstrated material prejudice to a substantial right. Accordingly, this court does not find plain error.

### III. CONCLUSION

The approved findings are correct in law and fact, the sentence is not inappropriate, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court